**BEST RESUME SERVICE, INC., Plaintiff,**

v.

**Ronald CARE, an individual and t/a Best Resume Service, Defendant.**

**No. Civ. A. 84–1337.**

United States District Court, W.D. Pennsylvania.

Jan. 30, 1985.

Michael D. Fox, Pittsburg, Pa., for plaintiff.

Richard Myers, Greensburg, Pa., for defendant.

## MEMORANDUM OPINION

ROSENBERG, District Judge.

This matter is before me on a motion for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure. The motion was initiated by Best Resume Service, Inc. to attempt to stop the defendant from engaging in any further competitive action, or engaging in any more resume writing after a franchise agreement between the parties had been cancelled.

This court's jurisdiction arises from the fact that this is an action brought under the trademark laws of the United States, 15 U.S.C. §§ 1051–1127, original jurisdiction being conferred in accordance with 15 U.S.C. § 1121 and 28 U.S.C. § 1338. Venue in this court is proper with respect to the claims asserted in the complaint, pursuant to 28 U.S.C. § 1391(b) because such claims arose in the Western District of Pennsylvania.

At the hearing the plaintiff demonstrated that if the defendant is not enjoined from continuing his competitive resume writing, the plaintiff, inter alia, will suffer irreparable harm to its business and goodwill as well as to the business and goodwill of its new Westmoreland County franchise, which has already opened, none of which will be compensable by monetary damages.

From the evidence presented, I have made findings of fact. Best Resume is a Pennsylvania corporation which has been doing business under the name of Best Resume Service since 1962. Ronald Care is a resident of Pennsylvania currently operating a business-styled "Best Resume Service" located in Greensburg, Pennsylvania. On April 12, 1979, Best Resume and Care entered into a franchise agreement pursuant to which Care was granted the exclusive franchise in Westmoreland County, Pennsylvania, excluding only that part of Westmoreland County within a ten mile radius of the City of New Kensington. Thereafter and until approximately October, 1981, Care regularly and routinely furnished royalties and operation reports to Best Resume pursuant to Article IV of the Franchise Agreement.

Article IV states that:

"Franchisee shall pay to Franchisor a sum representing seven percent (7%) of the gross cash receipts from the operation of Franchisee's business, said sums to be paid on a monthly basis to and received by Franchisor on or before the tenth day of each month for the preceding month, commencing the month following the month in which the Franchisee begins business. In the event Franchisee fails to pay Franchisor the above-mentioned royalty, Franchisor shall have the right to terminate this Franchise Agreement."

However, during the period from October, 1981 until the termination of the parties relationship in November, 1982, Care paid no royalties nor did he furnish any

operation reports. During 1982, Best Resume inquired of Care as to why he had ceased to remit royalties and operating reports and was advised by Care that he had elected to terminate the Franchise Agreement on November 22, 1982. Best had delivered to Care a formal acceptance of the termination and notice. The termination letter provided that he should cease operation of the franchised office by December 24, 1982, as provided for in the termination provisions of the Franchise Agreement.

At no time since October, 1981 has Care remitted any royalties, furnished operating reports or complied with any other duties of the Best Resume Franchisee, as provided in the Franchise Agreement. Subsequent to the termination of Care's franchise, Best Resume checked the yellow pages' listings and made inquiries at Care's place of business in order to satisfy itself that Care was not continuing to use or advertise by the trade name "Best Resume Service".

Following this, in March of 1984, Best Resume entered into a new Franchise Agreement for the Westmoreland County territory with a franchise which opened in Greensburg, Pennsylvania. The new franchise has alerted Best Resume to the fact that Care had resumed use of the trade name and service mark "Best Resume Service" by advertisements which were placed in the Tribune Review Newspaper in Greensburg on the dates of March 8, 26, 27, 28, 29, 30, 31 and April 1, 2, 3 of 1984 as indicated by exhibits admitted at the hearing.

Additionally, the authorized Best Resume franchise had received correspondence from a local bank which concerns one of Care's customers and which further indicates that Care is wrongfully using the name Best Resume Service. A copy of the Equibank letter and check were admitted into evidence as well.

The defendant, Ronald Care, avers to the contrary that the defendant did not wrongfully appropriate the name, but paid the plaintiff full and complete consideration for the name prior to the time the plaintiff had registered the name as a trademark. Care claims that he acquired the right to use the name by payment to the Franchisor of $12,500 to acquire the franchise. Care thus seems to be proposing the novel theory that the implementation of a franchise agreement involves the irrevocable sale of the name even if the franchisee breaches the contract and terminates the agreement.

The defendant further avers that the name registered by Best Resume Service, Inc. on February 24, 1981 is not the same because the name as registered has an accent mark over the word "resume" and in fact was registered after 1979 when the name was used by Ronald Care in the operation of his business. The evidence demonstrates franchise agreement was terminated by Ronald Care because of his breach of contract in failing to provide services called for under the franchise agreement.

The Lanham Act, 15 U.S.C. § 1053 provides that service marks are registerable in the same manner as trademarks, and when registered, are entitled to the same protections. With respect to infringement, 15 U.S.C. § 1114 states in pertinent part:

"(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, ..."

The remedies provided in § 1117 of the Lanham Act are recovery of profits, dam-

ages, costs and, in exceptional cases, reasonable attorneys fees.

■ Care's former right to the use of Best's name stemmed solely from the 1979 Franchise Agreement and was extinguished upon its termination. Care did not "buy" the name Best and nothing in the agreement supports such contention. Article VII of the Franchise Agreement provides that:

"Upon termination of this agreement for any reason whatsoever, Franchisee shall not thereafter for a period of 3 years engage either directly or indirectly, as principal or employee, alone or in association with others, in resume writing, preparation or similar business to that licensed and established herein, within a fifty (50) mile radius of any office of Franchisee, or any office of any other franchisee of Best Resume Service, Inc."

■ I find from the evidence presented that the use by the defendant of the Best Resume Service mark is likely to cause confusion. The Third Circuit indicated that the use of an identical mark upon identical services in the same market place in competition for the same customers would establish a likelihood of confusion entitling a claimant to injunctive relief. *Holiday Inns, Inc. v. B & B Corp.*, 409 F.2d 614, 618 (C.A. 3, 1969). In this case, the parties have used an identical mark (Best Resume Service) in an identical manner to promote the sale of the same type of services. Moreover, Care continued to use this mark after being advised that Best considered such use to be an infringement. *Victoria Station, Inc. v. Clarefield, Inc.*, 458 F.Supp. 199 (W.D.Pa., 1978).

■ Finally, it is a long-settled principle of law that a licensee of a trademark or trade name may not set up any adverse claim in and against its licensor. *Pacific Supply Co-op. v. Farmers Union Central Exch., Inc.*, 318 F.2d 894 (C.A. 9, 1963). Here the parties relationship is governed by the terms of a franchisee agreement which provides for complete ceasation of a trade name use upon termination of the contract. The evidence demonstrated that both sides agreed termination has occurred.

Care's continued use of the service mark cannot be other than unlawful.

■ A preliminary injunction is an extraordinary remedy based on a limited hearing and should be granted only in exceptional circumstances. *Continental Group, Inc. v. Amoco Chemicals Corp.*, 614 F.2d 351, 357 (C.A. 3, 1980). The moving party must show: (1) a reasonable probability of eventual success in the litigation; (2) that the moving party will suffer irreparable harm if the relief is not granted; and in addition when relevant, the court should consider (3) the possibility of harm to other interested persons from the grant or denial of the injunction; and (4) the public interest.

As outlined in the foregoing Memorandum Opinion, the plaintiff has demonstrated all of the above factors and therefore the plaintiff's motion for a preliminary injunction will be granted.